DUNLAVY v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y Co.

1. **Railroads**: INJURY TO BRAKEMAN WHILE CUTTING MOVING TRAIN: NEGLIGENCE OF CONDUCTOR: QUESTION FOR JURY. Plaintiff, a brakeman, was engaged in cutting a train while running slack, and was thrown from the train and injured by a sudden checking of the train, caused by the application of the brakes by the conductor. *Held* that, under all the circumstances, (see opinion,) it was a question of fact for the jury whether the conductor was negligent in applying the brakes when he did, and that it was error for the court to attempt to determine it as a matter of law.

2. ———: ———: PRESUMPTION OF CARE FROM NATURAL INSTINCTS: WHEN IT DOES NOT OBTAIN. The instinct of self-preservation, planted in all persons, may, in a proper case, be allowed some weight as raising an inference of care on the part of a person incurring danger; but if the direct evidence shows care, or the want of it, there is no room for a mere inference. *Way v. Illinois Cen. R'y Co.*, 40 Iowa, 345, distinguished.

3. ———: NEGLIGENCE OF CONDUCTOR: MISTAKE OF JUDGMENT. A railroad company is not liable for a mistake of judgment on the part of a conductor, if he acts as an ordinarily prudent man would do under like circumstances.

*Appeal from Keokuk District Court.*

MONDAY, JUNE 8.

ACTION to recovery for a personal injury. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*M. A. Low*, for appellant.

*Leggett & McKemey* and *Sampson & Brown*, for appellee.

ADAMS, J.—The plaintiff was employed by the defendant as a brakeman on a freight train. On the evening of the **1. RAILROADS:** thirtieth of March, 1880, he fell from the train **injury to brakeman** and was run over, and suffered the loss of an arm. **while cutting moving train:** The evidence tended to show that at the time of the **negligence of conductor:** accident he was engaged in uncoupling one part **question for jury.** of the train from the other, the train being in motion; and, while so engaged, the conductor applied a brake, and so checked the motion of the train as to cause a violent jerk, and by reason thereof plaintiff fell off. The negligence complained of is said to consist in applying the brake. The train consisted of some flat cars, some stock cars and a caboose. The plaintiff had been riding in the caboose, and was directed by the conductor to go out and pass over the stock cars and uncouple them, while in motion, from the cars ahead of them. The train, it appears, was running slack and pushing the engine. The uncoupling was to be effected by the plaintiff by descending the front end of the forward stock car, and drawing the pin while standing upon the draw-head. He testified that he had descended the ladder and was holding to the same with his left hand, his left foot remaining upon the ladder, and his right foot resting upon the draw-head; and that, while in this position, he was reaching down with his right hand to draw the pin, when he was thrown off by reason of the application of the brake. He also testified that, according to the custom, the conductor should not have applied the brake until he (plaintiff) had reappeared upon the other part of the train, and had given a signal to the engineer to increase the speed. The defendant claims that it was not the custom for the conductor to await such signal, nor for such signal to be given; but that it was the conductor's duty to apply the brake when a certain place was reached; that the plaintiff knew

that the brake was to be applied when the place had been reached, and should have been upon his guard, and should have maintained, as he might have done, such a hold upon the ladder as not to have been jerked off. There was evidence showing that the train was approaching the town of Liberty-ville, and tending to show that the conductor applied the brake at the usual and proper place, and that in so doing he was influenced by the fact that he had reached the proper place, and by the further fact that he saw a person with a lantern on the forward part of the train whom he supposed to be the plaintiff.

I. The court gave an instruction to the jury in these words: "If you find from the testimony that the plaintiff was directed by his conductor to cut the train while in motion, and that it had been and was the custom, under such circumstances, among train-men on freight trains on defendant's road, for the conductor in charge of the rear end of the train to not put on the brakes until the brakeman signaled the engineer and the conductor that the brakeman was ready for the brakes; or, though there may not have been a custom, if you find that the undertaking was hazardous, and that on account thereof, and of all the circumstances, ordinary care required the conductor to wait for such signal before applying the brakes; and you further find that the circumstances were ordinary, and that the conductor, within one and one-half to two minutes after the brakeman started, without waiting for a signal, put on the brakes, and thereby caused the injury by jerking the plaintiff off while pulling the pin, and the plaintiff was without fault on his part,—your verdict should be for the plaintiff." The giving of this instruction is assigned as error.

When a train is approaching a station under the circumstances of this one, it is important that the brakes should be applied to the rear part in time to stop it at the proper place. The evidence in the case shows clearly what difficulties arise if this is not done. The brakeman may be presumed to know about where the brake should be applied, and if he is

informed in time that the train is to be cut, he should see to it that this is done before reaching the place where the brake is to be applied. If he cuts the train before the brake is applied, it appears from the evidence that he may secure himself without much difficulty against the effect of the jerk consequent upon the application of the brake. So far we think there can be no controversy. But, after a fault has been committed, difficulties begin to arise. There was evidence tending to show that the plaintiff should have cut the train sooner than he did. Whether it was the plaintiff's fault that he did not succeed in cutting the train and in securing himself depends much upon whether he was informed soon enough that the train was to be cut. But, whether he was in fault or not, the conductor owed him the duty of reasonable care. He knew, of course, that a violent jerk would expose the plaintiff, if made when he was in the act of pulling the pin, and if he was not upon his guard. It is very clear, therefore, that it was the duty of the conductor to wait as long as he could properly, unless he had evidence that the uncoupling had been effected. Indeed, in applying the brake sooner, the slack was taken up and the uncoupling prevented.

How long a conductor should wait in a case of uncertainty as to whether the uncoupling has been effected, or what degree of certainty he should have that the uncoupling has been effected before applying the brake, are questions which depend upon several circumstances bearing more or less upon each other. The controlling considerations are those which arise naturally out of the facts, and are the proper subjects of argument by counsel rather than of instructions by the court. In the instruction above set out, the court instructed the jury, in effect, that if the circumstances were ordinary, the conductor should, after the brakeman started, have waited at least two minutes. In our opinion this matter of time should have been left to the jury. The undisputed evidence shows that the conductor saw a brakeman on the forward part of the train with a lantern, whom he supposed to be the plaintiff.

The instruction is based upon the theory that the jury might find that the circumstances, including this circumstance, were ordinary. Now, we are not prepared to say that the conductor, seeing what he did, was, as a matter of law, guilty of negligence if he did not wait two minutes. Perhaps he was; perhaps he should have had a greater degree of certainty as to the identity of the person he saw. But a mistake does not necessarily evince negligence. The question is, did he act with such care as a reasonably prudent man might have been expected to use under the circumstances? We cannot say, that, as a matter of law, he did not, even if he waited less than two minutes.

II. The court instructed the jury in these words: "The jury may take into consideration, in weighing the evidence, the hazardous nature of the work in which the brakeman was employed, and give due weight to the instincts and presumtions which naturally lead men to avoid injury and preserve their own lives." The giving of this instruction is assigned as error. The instinct of self-preservation, planted in all persons, may, in a proper case, be allowed some weight as raising an inference of care. *Way v. Illinois Cen. R'y Co.*, 40 Iowa, 345. But where the party who has the burden of proving care can show by direct evidence what care was exercised, he should, we think, show it by such evidence; and if the direct evidence shows care, or a want of it, there is no room for a mere inference. The plaintiff was able to show by direct evidence what care he exercised. The case is different from *Way v. Illinois Cen. R'y Co.*, above cited. We think that the instruction is erroneous.

*2. ——: ——: presumption of care from natural instincts: when it does not obtain.*

III. The defendant asked the court to give an instruction as follows: "The defendant is not liable for a mistake of judgment of the conductor in applying the brakes, if he acted as an ordinarily prudent man would have done under like circumstances." The court refused to give the instruction, and the defendant assigns the

*3. ——: ——: negligence of conductor: mistake of judgment.*

refusal as error. In our opinion the instruction should have been given. It was a correct expression of the law as applicable to the theory of the defense. It is claimed by the plaintiff that the instruction was covered by other instructions given, but it does not appear to us that it was.

We think that the judgment of the district court must be

REVERSED.