H. C. LARRABEE, Appellant, v. DES MOINES TENT & AWNING COMPANY et al., Appellees.

**NEGLIGENCE:** Negligence Arising Out of Contract Relation—
1   **Strangers to Contract.**   A temporary amphitheater, erected in the public street by a contractor for another, with negligence of such a nature that the same might have been readily discovered on quite reasonable examination, is not such an imminently dangerous structure as to come within any exception

to the rule that *negligence arising out of contract relations will not give a cause of action to one who is a total stranger to the contract.*

NEGLIGENCE: Res Ipsa Loquitur. Principle recognized that the
2  doctrine of *res ipsa* is applicable only, as a general rule, when all the instrumentalities which might cause an injury are under the *exclusive* control and management of the defendant.

NEGLIGENCE: Extent of Permissible Reliance on Contractor. A
3  photographer who has caused a temporary amphitheater to be constructed by a contractor for photographic purposes, and has exclusive custody of such structure after its completion, may, perhaps, so rely on the skill of the contractor as to be excused from *inspecting* the structure and from *discovering* weakened timbers; but he may not be excused from *guarding* the structure in order to prevent the removal of supporting parts thereof, if such guarding appears reasonably necessary.

*Appeal from Polk District Court.*—THOMAS J. GUTHRIE, Judge.

JULY 6, 1920.

ACTION for damages for personal injuries resulting from negligence. At the close of the evidence, there was a directed verdict for each defendant. The plaintiff appeals. —*Affirmed in part; reversed in part.*

*Frank T. Jensen* and *R. S. Milner,* for appellant.

*Miller, Kelly, Shuttleworth & Seeburger* and *Nourse & Nourse,* for appellees.

EVANS, J.—I. At the time of the injury complained of (March 15, 1917), the plaintiff was attending at Des Moines the state convention of a telephone association.

1. NEGLIGENCE: negligence arising out of contract relation: strangers to contract.

The defendant Bittle was a photographer, who proposed to the association to take a group photograph of its members, and for that purpose caused seats to be erected for

the convenient sitting of the group. These seats, upon Bittle's invitation, were occupied by a group of 30 or more; and, while occupied, the whole structure suddenly collapsed, whereby the plaintiff suffered a severe injury to his foot. These seats had been rented by Bittle from the Des Moines Tent & Awning Company, defendant, whose employees had put the structure together. This structure is referred to in the record as "circus seats." It was in the line of the business of the Des Moines Tent & Awning Company to furnish such seats for rental for temporary purposes. These particular seats had been bought from a reputable manufacturing company, engaged in the manufacture of such seats. This structure was composed of 22 pieces of timber, which were put together according to a formula, for the purpose of use. These pieces included uprights, or jacks, which were the support of the structure; upon the jacks rested stringers, or risers; upon the risers rested boards, which furnished the seating. There were three stringers, and three jacks, or uprights, under each stringer. The employees of the Des Moines Tent & Awning Company had finished the structure, and had left it in the possession and control of Bittle, who was to have the use of same for one hour. The collapse occurred within about 15 minutes from such time. The structure was constructed on the west side of the Chamberlain Hotel, facing west, and extending over the sidewalk into the street. The seats were arranged in tiers, the higher ones being about 9 feet high. Some of the jacks, or uprights, rested upon the sidewalk. Pedestrians passing along the sidewalk passed under the structure. The record does not disclose the real cause of the collapse. The plaintiff introduced evidence to show the accident and the injury suffered by him, and rested. His reliance is upon the doctrine of *res ipsa,* and he contends that the fact of the accident was sufficient to warrant the inference by the jury that it was the result of the negligence of the *defendants.* The defendants did not present a common defense. Each appeared by his own counsel, and filed a separate answer. Their liability re-

spectively is not governed by the same rules. We shall, therefore, deal separately with the question of the liability of each, and deal first with that of the defendant Des Moines Tent & Awning Company.

There was no privity of contract or invitation between this defendant and the plaintiff. This defendant dealt with Bittle alone, and its contractual liability was one to Bittle alone. It delivered to Bittle the identical thing for which Bittle contracted, and caused it to be set up in the manner and at the place directed by Bittle.

It is broadly true that, where the charge of negligence is based upon a breach of duty arising out of contractual relations, no cause of action arises in favor of one not in privity to such contract. To this general rule there are exceptions. Such exceptions arise when one has, by sale or otherwise, put into circulation, so to speak, some noxious or imminently dangerous thing, which is likely to cause serious injury to any person into whose hands it may come. These include poisons not labeled, explosives, vicious animals, etc. This exception applies, not only to sales of personalty, but may also apply to the construction of structures imminently dangerous to human life, while such structure is within the possession and control of the wrongdoer. If the thing sold or constructed be not imminently dangerous to human life, but may become such by reason of some concealed defect, then a liability may arise against such vendor or constructor, if he knew of the defect and fraudulently concealed it. The liability in such case is predicated upon deceit. Subject to these exceptions, the general rule is stated by Wharton as follows:

"Thus, a contractor is employed by a city to build a bridge in a workmanlike manner; and, after he has finished his work, and it has been accepted by the city, a traveler is hurt, when passing over it, by a defect caused by the contractor's negligence. Now, the contractor may be liable on his contract to the city for his negligence, but he is not liable to the traveler, in an action on the case for

damages. The reason sometimes given to sustain such a
conclusion is that otherwise there would be no end to suits.
But a better ground is that there is no causal connection,
as we have seen, between the traveler's hurt and the con-
tractor's negligence. The traveler reposed no confidence
on the contractor, nor did the contractor accept any con-
fidence from the traveler. The traveler, no doubt, reposed
confidence on the city that it would have its bridges and
highways in good order; but between the contractor and
the traveler intervened the city, an independent responsible
agent, breaking the causal connection." Wharton on Neg-
ligence (2d Ed.), Section 438 *et seq.*

To the same effect are the following authorities:
*O'Neill v. James,* 138 Mich. 567 (101 N. W. 828); *Zieman
v. Kieckhefer Elevator Mfg. Co.,* 90 Wis. 497 (63 N. W.
1021); *Heizer v. Kingsland & Douglass Mfg. Co.,* 110 Mo.
605 (19 S. W. 630); *Slattery v. Colgate,* 25 R. I. 220 (55
Atl. 639); *Simons v. Gregory,* 120 Ky. 116 (85 S. W. 751);
*Young v. Smith & Kelly Co.,* 124 Ga. 475 (52 S. E. 765);
*McCaffrey v. Mossberg & Granville Mfg. Co.,* 23 R. I. 381
(50 Atl. 651); *Fitzmaurice v. Fabian,* 147 Pa. 199 (23 Atl.
444).

In order to bring the defendant within the exceptions,
it was incumbent upon the plaintiff to prove the necessary
facts to that effect. He introduced no evidence to that
end. The structure was not imminently dangerous, though
it be true that defects in material or in construction could
make it such. It was professedly a temporary structure,
and could be knocked down in a mere moment. This could
be done by the removal of any of the supports, or jacks,
and could be caused in such manner by any pedestrian
or bystander. It was erected over a crowded thoroughfare.
After the collapse, one stringer was found broken. Whether
this break *caused* the collapse or was the *result* of it, in
no manner appears. At the place of the break, the stringer
(a two by six) was penetrated by a five-eighths-inch bolt.
This is the only defect, if such, disclosed. Bolts were a
part of the structure, and were essential to its plan. The

evidence shows, without dispute, that this stringer could not have broken at such place, unless the jack thereunder were removed.

Upon such a state of facts, can it be said that mere proof of the accident is sufficient evidence to warrant an inference by the jury of the negligence of this defendant within the exceptions above stated?

It is to be remembered that the doctrine of *res ipsa* does not ordinarily apply unless it is made to appear that all the instrumentalities which would be likely to cause the accident were under the exclusive control and management of the defendant, and that the accident was such as would not ordinarily occur if due care had been exercised in the control of such instrumentalities. There is no dispute in the evidence in this record. The details of the construction are shown by the evidence on both sides. It is undisputed that the structure was put together in proper form. The evidence does not disclose the actual cause of the collapse, but the whole tendency is to show that there must have been some interference with the supports. It may be that so temporary a structure, built for the purpose of being quickly knocked down, should have been carefully guarded, for the few moments of its occupancy, against interference by pedestrians or bystanders. But no such duty devolved upon this defendant. Its employees, having completed the structure, left it to the control of the defendant Bittle, as they had a right to do. Upon the whole record, therefore, our conclusion is that the trial court properly directed a verdict for this defendant.

2. NEGLIGENCE: res ipsa loquitur.

II. We have no argument for the defendant Bittle. The plaintiff entered upon the structure in question upon his invitation. The invitation was, indeed, a distinct request made by Bittle, for the purpose of photograph, which was doubtless to be offered for sale thereafter to the members of the group. He sustained a voluntary re-

3. NEGLIGENCE: extent of permissible reliance on contractor.

lation to the plaintiff, which imposed upon him the duty to exercise reasonable care for plaintiff's safety while he occupied the structure upon which he was invited. Whatever the actual cause of this accident, such cause could be found to be fairly within the range of Bittle's supervision and control. The accident was one which would not ordinarily happen. A jury might find that ordinary care on his part would require that he should have inspected the structure before its occupancy, and that he should have guarded its supports against interference, accidental or otherwise, by passers-by. He did not inspect, and did not guard. His reliance upon the employees of his codefendant might be sufficient to justify his failure to inspect. This would be a jury question, upon the whole record. But reliance upon the employees of his codefendant would not justify a failure to guard against interference, if such guarding was required by ordinary care. It may be true, also, that he was not required to discover the alleged defect in the stringer, because of the bolt hole therein. We are inclined to that view. Upon the whole record, however, we think that the circumstances of the accident, as disclosed by the evidence on behalf of plaintiff, were such as entitled him to rest. These circumstances sufficiently tended to show negligence of some kind, within the range of this defendant's duty to plaintiff, and he was entitled to go to the jury thereon. It was, of course, open to this defendant to rebut such tendency by such evidence as he could produce.

We think, therefore, that it was error to direct a verdict in favor of this defendant. The judgment below will be affirmed as to the first-named defendant and reversed as to the last.—*Affirmed in part; reversed in part.*

Weaver, C. J., Preston and Salinger, JJ., concur.