RUTH VANCE, Administratrix, Appellant, v. WALTER E. GROHE, Appellee.

No. 43951.

1110

September 21, 1937.

Rehearing Denied January 21, 1938.

 

Locke & Lampman, R. W. Zastrow, and W. G. Henke, for appellant.

C. C. Putnam of Putnam, Putnam, Fillmore & Putnam, and G. C. Murray, for appellee.

HAMILTON, C. J.—Cedar Inn is located about 2½ miles northwest of Charles City on federal highways 18 and 218. On the night of September 30, 1934, a group of young people, including the decedent, Edward Bluhm, Marvin Soehren, Gladys Runyard, and Stanley O'Dowd, were at the inn. At about one o'clock in the morning Edward Bluhm started to leave the inn to go to the city for the purpose of getting someone to come and transport his party to town. As he left the inn he saw the defendant who was outside sitting alone in his automobile, and the defendant, learning of Bluhm's intention offered to take him to town. They started out and as they were leaving the premises they saw the four other young people, and the defendant likewise offered them a ride into town. None of the party had ever met the defendant before. They all got into the car, Bluhm in the front seat with the defendant, and the four others in the back seat. The Chicago, Milwaukee Railroad track intersects this highway, the track running in an easterly and westerly direction, and in going to and from Cedar Inn to Charles City it is necessary to cross this railroad track. As they were driving toward the city and had almost reached their destination, there was something said about another couple that was still out at the inn, who had no way of getting to town except to walk, and that it was Bluhm's intention to get someone and go back after this couple. On learning this fact the defendant said that he could go back and get them, there was still plenty of room in the car, that they could ride in the front seat. Bluhm said that he would buy some gas if the defendant would go back after this couple. They stopped on their way into town and bought two gallons of gas and Bluhm paid for it. Defendant drove on down to the main street of the town, made a U turn and started back. Some of the party, including the decedent, protested about going back; there was something said about there not being room in the car and some of them said they wanted to go home and that they would get out and walk the remaining distance home. The defendant apparently paid no attention to their protests, insisted on being a

good fellow, and drove right on back toward Cedar Inn with the intention of picking up this additional couple, and it was on the way back, as he came to this railroad crossing that the accident occurred which took the life of the decedent. A freight train was moving west across the pavement and the defendant's automobile was driven into this moving train.

There is a sharp dispute in the testimony as to just what was said and done immediately preceding the accident. The evidence on the part of the plaintiff was to the effect that when they had reached a point on their way back to the inn about 1100 feet south of the railroad track, Bluhm saw the moving train and called the defendant's attention to the fact that there was a train going across the highway, and again when they had reached a point about 500 or 550 feet south of the railroad crossing Bluhm hollered, "Lookout, there's a train on the track," and the defendant said, "I see it," but did not slacken his speed and drove right on into the moving train, pulling his car to the left just before the impact, but too late to avoid the collision. On the other hand the defendant contends that no one saw the train until they were right on to it; that there was some fog on the highway, making visibility poor, and he switched his lights down the better to see; that because of some timber along the railroad track a shadow was cast; that because of these conditions he did not see the train until he was within 35 or 50 feet of it, and it was at this point that Bluhm cried, "There's a train on the track"; that he put on his brakes, shoving his foot down as hard as he could and pulled his car to the left in an attempt to avoid the collision, but was too close to prevent his automobile from coming in contact with the side of the train.

We will make no further comment on the facts, except as necessary in passing upon some of the legal questions involved, for the reason that the case will have to be reversed and may be retried.

■■■ Appellee earnestly contends that the assignments of error do not comply with Rule 30, and technically speaking, they do not. Apparently counsel for appellant in preparing their brief and argument overlooked the citation of the pages and lines of the abstract where the propositions complained of were to be found, and these are printed on the margin opposite each of the assignments of error. This is not in strict compliance with the rule, but does answer the purpose which the rule was in-

tended to accomplish, namely, pointing out to the court the particular page and the lines of the page of the abstract where the matter complained of may be found by the court without looking through the entire abstract, and while not approving this method, we are constrained to hold that this is in substance, if not in form, a substantial compliance, and will therefore consider the assignments of error upon which the appellant bases her appeal.

The complaints are in the main against the instructions given by the court and refusal of the court to give certain requested instructions. It is necessary to point out and especially consider only a portion of the complaints made.

██ In presenting the issues to the jury, the court in instructions 6 and 7 defined negligence and reasonable care and then said:

"In this case the plaintiff claims that the defendant was reckless in the operation of his car as specified in Paragraph 1 of these instructions. You have been told the meaning of negligence, and you are further instructed that recklessness means more than negligence. Recklessness indicates an absence of all care, an indifference to consequences and in the case of the driver of a motor vehicle, it also means driving the vehicle in heedless disregard of consequences. It does not mean thoughtlessness or error of judgment."

The complaint lodged against this instruction is that the court in thus defining negligence and reasonable care, and then instructing the jury "that recklessness means more than negligence" unduly emphasized matters in defense and unduly minimized the rights of the plaintiff, and that the court should not in this manner have made the comparison between negligence and recklessness. Recklessness was not a matter of defense, it was the very basis of plaintiff's right of action. The right of action being based upon a special statutory ground, it was the court's duty to plainly differentiate and point out to the jury the distinction between negligence and recklessness, and there was nothing in the manner and method adopted by the trial court which would in any way confuse or mislead the jury, and we think the appellant is hypercritical in her complaints lodged against this instruction.

██ It is also urged that the court erred in not submitting to the jury for their determination the issue as to the relation-

ship between the parties, and in not permitting the jury to say whether or not the decedent was a guest, or whether she was being restrained against her will or riding as a passenger for hire, appellant contending that there was evidence from which the jury could have found that decedent was not a guest but on the trip back to the inn was being transported against her will or that she was a passenger for hire because of the purchase of two gallons of gas by Bluhm. After the evidence was all in, the plaintiff requested the court to submit the issue of whether plaintiff's decedent was or was not a guest at the time of the collision and the issue of defendant's liability under the law of negligence. This the court refused and on his own motion instructed the jury that the decedent was a guest as a matter of law. We think the trial court was right in so holding.

The plaintiff's case is based upon recklessness, and the case was so tried and submitted. Even in her objections and exceptions to the court's instructions on page 106 of the abstract, the plaintiff cited as error on the part of the trial court the giving of certain portions of instruction 8 for the reason, as she states, that "the plaintiff based her claim on no care whatever, or upon recklessness."

**█▮█** In instruction 8, in presenting the issues to the jury, the trial court used this language:

"It is the contention of the plaintiff that the defendant was warned twice of the presence of the train upon the crossing, first at a distance of approximately eleven hundred feet or more south of the crossing and again at a distance of approximately five hundred or five hundred and fifty feet south of the crossing and that despite these warnings he continued without reduction of speed up to and into the train. This the defendant denies, and in this connection you are instructed that in arriving at the truth of this matter you are entitled to take into consideration the *natural concern of defendant for his own safety and instinct of self-preservation* and the conditions surrounding the crossing," etc.

We have italicized that portion of the above instruction which appellant contends should not have been given. Under the prior decisions of this court we see no escape from this contention. In this case the defendant took the witness stand and gave his version of how this accident happened, and told of his own conduct. Under such circumstances he was not entitled to the

benefit of the presumption or inference that the natural instinct of self-preservation would prompt him for his own safety not to run into the moving train.

The authorities are not uniform throughout the country as to the circumstances under which it is proper to give this instruction, but our court has quite uniformly held that the instinct of self-preservation is to be taken into account as tending to show freedom from negligence only where direct evidence as to whether the injured party did or did not exercise reasonable care is not attainable. Burk v. Walsh & Oltrogge, 118 Iowa 397, 400, 92 N. W. 65, 66. The cited case was a personal injury case, but not a death case. The plaintiff was injured in walking into an open hatchway of an elevator. Plaintiff took the witness stand and testified to the circumstances attending his injury and his conduct as bearing upon the question of contributory negligence. In substance the court told the jury that it was not incumbent upon the plaintiff to establish his freedom from contributory negligence by direct and positive evidence, but that want of negligence on his part might be established from the facts and circumstances in the case, and that in determining whether the plaintiff was free from negligence the jury could take into consideration "all the facts and circumstances as shown by the evidence surrounding the transaction and the instincts of the plaintiff, which would naturally lead him to avoid the danger of walking into the open hatchway as evidence upon the question of care and caution on his part." The giving of this instruction was held clearly erroneous. The court said:

"This instruction is contrary to the rule recognized in numerous decisions of this court to the effect that the instinct of self-preservation is to be taken into account as tending to show freedom from contributory negligence only where direct evidence as to whether the injured party did or did not exercise reasonable care is not attainable. Dunlavy v. Railway Co., 66 Iowa 435, 23 N. W. 911; Whitsett v. Railway Co., 67 Iowa 150, 25 N. W. 104; Reynolds v. City of Keokuk, 72 Iowa 371, 34 N. W. 167; Hopkinson v. Knapp & Spalding Co., 92 Iowa 328, 60 N. W. 653; Salyers v. Monroe, 104 Iowa 74, 73 N. W. 606; Bell v. Town of Clarion, 113 Iowa 126, 84 N. W. 962. In 1 Thomp. Neg. (2d Ed.) section 402, the rule adopted by this court is criticised as contrary to the weight of authority indicated in the preceding

section that the inference from the instinct of self-preservation may be taken into account as supporting direct evidence tending to show freedom from contributory negligence, but we think that the doctrine of this court may be supported on the reasonable ground that, where there is direct evidence as to the facts and circumstances surrounding the injury the inference from the instinct of self-preservation is secondary evidence, and not to be considered. At any rate, the rule is now too well established in this state to be disregarded without overruling well considered cases which are directly in point, and this we are not disposed to do." See, also, Lindloff v. Duecker, 217 Iowa 326, at page 330, 251 N. W. 698. For a full discussion of this matter see 45 C. J., page 1155, section 744 et seq.

In the case of Salyers v. Monroe, 104 Iowa 74, at page 78, 73 N. W. 606, 608, in speaking of this matter the court said:

"It is settled that such an instruction may be given where the care exercised by a person at the time of an accident which caused his death is in question, and direct evidence as to such care used cannot be had. Way v. Railroad Co., 40 Iowa [341] 342. But, when there is such evidence, the instinct of self-preservation cannot be given any weight. Dunlavy v. Railway Co., 66 Iowa [435] 439, 23 N. W. 911; Whitsett v. Railway Co., 67 Iowa [150] 157, 25 N. W. 104; Reynolds v. City of Keokuk, 72 Iowa [371] 372, 34 N. W. 167. The eleventh paragraph of the charge was therefore erroneous, for the reason that the plaintiff gave direct testimony respecting the care he used at the time of the accident."

In the Reynolds case, supra, the court said:

"Where the person injured is living, and does or can testify to the facts and circumstances, and in what manner the injury was received, then there is no reason why the inference arising from the instinct of self-preservation should be indulged."

In the Dunlavy case, supra, the court said:

"The instinct of self-preservation, planted in all persons, may, in a proper case, be allowed some weight as raising an inference of care. Way v. Illinois Cent. Ry Co., 40 Iowa [341] 345. But where the party who has the burden of proving care can show by direct evidence what care was exercised, he should, we

think, show it by such evidence; and if the direct evidence shows care, or a want of it, there is no room for a mere inference. The plaintiff was able to show by direct evidence what care he exercised.''

While this matter usually arises in connection with the question of contributory negligence on the part of one who has been injured or killed in an accident, we see no reason why the same principle is not applicable in any case where the issue is the determination of whether a party exercised or did not exercise care. The issue in the instant case was whether or not the conduct of the defendant constituted recklessness. He took the witness stand and testified as to his conduct. Others who were eyewitnesses likewise testified to his conduct. Under the rule above announced, under such circumstances where direct evidence was thus available, consideration of secondary matter based on inference, having for its object the establishment of due care or to refute the charge of recklessness on the part of the defendant, was not permissible.

██ ██ The court also instructed the jury:

''A protest or warning by a guest in an automobile may be important if it tends to show disregard of consequences on the part of the host, but it is not necessarily decisive or controlling in that regard, for the driver is charged with the responsibility of the operation of his car and he is not necessarily at his peril required to comply with the protest or warning of a guest in the car unless a failure so to do under the circumstances would be reckless as herein defined.''

Error is also predicated upon the giving of this instruction, and we think there is merit in the appellant's complaint. The record shows it was given verbatim as requested by the defendant. Considered abstractly it states a correct principle of law, but as applied to the facts in this case it is misleading. If the instruction was to be given in the language above quoted, it should have been followed by the converse of the same proposition, to the effect that if the jury found from the evidence that the defendant was warned at a distance of 500 or 550 feet from the crossing and told that there was a train upon the crossing, and that in spite of such warning he continued without attempting to stop or reduce his speed, and drove into and against the

moving train, then they would be warranted in finding the defendant guilty of recklessness as a matter of law. Especially is this true since the plaintiff *so requested*.

█■█ Appellant very strenuously complains that the instructions taken as a whole unduly emphasize matters favorable to the defendant, and by repetition or multiplication of such instances the instructions are given the effect of being argumentative and the respective contentions, claims and theories of the parties are not kept in proper equipoise, the appellant citing in her argument what she contends are many instances in the court's instructions which furnish a just basis for this complaint. She cites in support of this complaint the rule in 64 C. J., 682, wherein it is stated:

"It is error to give instructions that unduly emphasize issues, theories or defenses, whether by repetition or by singling them out and making them unduly prominent, although the instructions may be correct as legal propositions."

We are not inclined to lay down any categorical formula for trial courts to follow in expressing themselves in presenting the issues to the jury. However, we are constrained to say that the instructions of the court in this case in some respects do seem to warrant the criticism that the plaintiff's side of the case in contrast to that of the defendant was not fully and fairly submitted to the jury. That part of instruction 8 referring to the purpose of the railway "Lookout" sign is a fair example. The language used is quite argumentative in character and tends to minimize the importance of this warning sign. Care will no doubt be taken, if the case is retried, to avoid this by fairly stating the issues without undue repetition and without undue emphasis or minimization of specific facts or circumstances.

█■█ Objection is also made to, and error predicated upon, the fact that certain witnesses were permitted to give expert testimony. The brakes on the car were still set when it was taken from the wreckage, and defendant undertook to show that this indicated that the brakes were probably set before the collision. He placed on the witness stand a mechanic of years' experience, who, we think, showed he was properly qualified to give such testimony, and there was no error on the part of the court in permitting him to so testify. The same is true of the witness who

gave expert testimony with reference to the lights. This matter was properly covered by the court's instructions.

The foregoing matters were all presented to the court in a motion for new trial and by objections and exceptions to instructions. For the errors pointed out the case is reversed and remanded.—Reversed and remanded.

PARSONS, DONEGAN, ANDERSON, SAGER, and RICHARDS, JJ., concur.