BASIL SMITH and FLORENCE SMITH, appellees, v. ROBERT ULLERICH and PAUL E. UNDERWOOD, appellants.

No. 52133.

798

SEPTEMBER 20, 1966.

REHEARING DENIED NOVEMBER 15, 1966.

Newman, Redfern, McKinley & Sabbath, of Cedar Falls, for appellant Robert Ullerich.

O'Donohoe & O'Connor, of New Hampton, for appellant Paul E. Underwood.

Parker, Sindlinger & Baker, of Cedar Falls, and Kildee, Keith, Gallagher & Lybbert, of Waterloo, for appellees.

MASON, J.—This is an action seeking damages for personal injuries sustained by plaintiff-husband. Plaintiffs allege in separate divisions of the petition specific negligence, res ipsa loquitur and loss of consortium. At the close of evidence defendants moved for a directed verdict, to withdraw certain specifications of negligence and to withdraw the division based on res ipsa loquitur. The trial court withdrew the issue of res ipsa loquitur and overruled the other parts of the motion.

Following a jury verdict for defendants, the trial court sustained plaintiffs' motion for a new trial and defendants appeal.

Plaintiffs' motion was based on eleven grounds. The trial court determined only two merited consideration, its failure to submit res ipsa loquitur and the question whether the verdict was so out of reason with the evidence as to shock the conscience or sense of justice because of hasty consideration by the jury.

In ruling on the motion the court expressed the opinion plaintiffs were entitled to have their cases submitted on the theory of res ipsa loquitur. After reciting facts occurring during the trial and deliberations of the jury, which we will detail later, the court stated there was sound basis "for the conclusion that substantial justice was not established in this case."

Defendants assign as errors relied on for reversal the trial court's (1) failure to sustain defendants' motion for directed verdict, and (2) granting plaintiffs a new trial.

I. To support the first assignment defendants contend plaintiff-husband was contributorially negligent as a matter of law. While conceding the matter of contributory negligence is generally for the jury, they argue if plaintiff by his own testimony establishes without question that his own acts in some manner or degree contributed directly to his own injuries, there can be no recovery.

On the date of the accident plaintiff, Basil Smith, was assisting defendant, Robert Ullerich, and his hired man, defendant Paul E. Underwood, install a silo chute on a farm owned by Basil Smith's father and rented by defendant Ullerich. Defendant Underwood was defendant Ullerich's son-in-law. Plaintiff alleged that while he was working near the bottom of the chute, the hired man dropped a heavy electric drill which had been secured by a rope tied near the top of the silo and hung down through the chute to a point a few feet above plaintiff's head; in attempting to get out of the way of the falling drill, plaintiff fell several feet from his position on the silo to a concrete slab below, causing him serious injuries.

The silo chute had been constructed by the parties a few days prior to the date of the accident. It was 30 inches in width and 28 inches in depth, inside measurements, consisted of three sides with the silo acting as the fourth and was 27 feet 2 inches long. On the morning of the day in question the chute was loaded on a lowboy trailer and transported to the silo. A block

and tackle was used to pull and drag the chute from the ground up to the intended position on the silo. In addition to the block and tackle two tag or guide ropes were attached to the upper portion of the chute to guide its lateral movement as it was being pulled into place. After the chute was pulled into place it was discovered some of the holes in its faceplates did not line up with the securing bolts on the silo and it would be necessary to drill new holes in the chute. Defendant Ullerich had planned to combine beans after lunch and arranged for defendant Underwood to assist plaintiff in installing the chute. When plaintiff and Underwood returned to work, Underwood brought plaintiff's heavy-duty electric drill out of plaintiff's car to the silo. The drill was the type which has the handle at its rear rather than along the side.

The drill was tied to the bottom or loose end of one of the guidelines hanging from the top of the chute and Ullerich then climbed up near the top of the silo and pulled the drill up some distance inside the chute, tying the rope to one of the upper crossbars of the silo opening. The drill was suspended point down so as to be available for plaintiff's use in redrilling near the bottom of the chute and Underwood could raise or lower the drill to plaintiff as the work required.

Plaintiff improvised a safety device consisting of a V-belt and hay hook to enable him to hook himself to the silo doors while he did this work. The nature of the work and how it was to be done were discussed by plaintiff and Underwood prior to the hired man's going to the top of the silo to suspend the drill.

Plaintiff then climbed up several feet on the ladder formed by the crosspieces on the silo doors to a point where his body was inside the lower portion of the chute. He weighed about 260 pounds so there was little room on either side when he was in the chute. There were two crosspieces attached inside the chute, the upper one a double two-by-four to carry its weight and the lower just to keep its flimsy sides from flapping. Plaintiff determined the lower brace would interfere with drilling the holes and should be removed. He called to Underwood to haul the drill up out of the way while he was removing the brace. Plaintiff's feet were approximately six feet off the ground and the drill approximately 18 inches above his head.

Up to this point there is no real dispute as to the facts. Plaintiff's evidence is that he started to climb down a few steps to where he wanted to drill the holes and called to defendant Underwood to lower the drill. Plaintiff had then unhooked the hay hook and was holding it in his right hand, his left hand was holding onto a step above him and he was looking down to where he was going to put his foot on a step. As he was climbing down, the drill suddenly dropped point down toward him into his line of vision, causing him to jump back to get out of the way and thus fall a distance of several feet to the concrete slab on the ground.

Plaintiff did not know where the drill was after the fall. Underwood came down from the silo to keep the hogs from rooting plaintiff while plaintiff's wife went for help.

As part of plaintiffs' case, portions of Underwood's deposition and earlier statements were received in evidence, to the effect that when he was untying the rope the drill was hanging from, the slack in the knot was released, the drill fell and it would not have done so if Underwood had held the rope as he should.

Defendants assert the foregoing facts show as plaintiff's own admission he called for a ten-pound electric drill, fitted with bit, to be lowered in the chute from its hanging position approximately a foot to 18 inches above his head for his use in drilling a hole for fastening the chute to the silo at a time when both his hands were occupied and he was looking at the ground. They contend if plaintiff had not called for the drill until he was in a place with his safety belt attached, ready to use the drill or if he had looked up or reached up to receive and guide the drill as it came down, either before or after he descended the one step, the accident would not have happened. They argue it was only logical for Underwood to assume plaintiff was ready to receive the drill when he asked for it.

We are not persuaded defendants' position can be sustained.

■ ■ It is only the exceptional case in which the issue of freedom from contributory negligence should not be submitted to the jury—only where such negligence is so palpable, flagrant and manifest that reasonable minds may fairly reach no other conclusion; if there is any evidence tending to establish plain-

tiff's freedom from contributory negligence, the question is one of fact for the jury and the doubts should be resolved in favor of such submission. Goman v. Benedik, 253 Iowa 719, 721, 113 N.W.2d 738, 739, and citations.

■ We are satisfied the trial court was correct in submitting the contributory negligence issue to the jury. This is not the exceptional case in which reasonable minds could fairly reach no other conclusion than that plaintiff was contributorially negligent.

II. Defendants argue in support of their next assignment based on granting a new trial after a jury verdict for defendants, that the major and primary reason for the ruling was failure to submit res ipsa loquitur and other reasons given were secondary or supporting. They assert plaintiffs did not establish the two foundation facts necessary for an instruction on the doctrine and thus were not entitled to a res ipsa loquitur instruction. So, we are told, there was no basis for granting a new trial and defendants are entitled to a reversal.

The court stated in its ruling plaintiffs were entitled to the benefit of the res ipsa loquitur doctrine and accordingly should have a new trial. After discussing reasons for this view the court considered the second question presented by plaintiffs' motion, whether the verdict was so out of reason with the evidence as to shock the conscience or sense of justice because of hasty consideration by the jury. (Fifty minutes after retiring to deliberate the jury was back in the courtroom with a verdict for defendants.) In conclusion the court stated it "would not upon this ground alone grant a new trial for the reason given in plaintiffs' motion [hasty jury consideration]. The court does believe, however, that this is a matter to be taken into consideration to some extent in connection with the ruling on this motion, and does feel there is substantial basis for the conclusion substantial justice was not established", a ground asserted in plaintiffs' motion.

The court's ruling thus listed the two grounds for awarding the new trial.

■ We agree plaintiffs were not entitled to have the doctrine of res ipsa loquitur submitted, but we cannot accept de-

fendants' argument that a reversal must follow. It is settled that the grant of a new trial must be upheld if any grounds of the motion therefor are good, even though the ruling is not based upon them. Jordan v. Sinclair Refining Company, 257 Iowa 813, 820, 135 N.W.2d 120, 124, and citations.

III. The doctrine of res ipsa loquitur is not properly applicable to this case.

"Under the doctrine referred to, where injury occurs by an instrumentality under the exclusive control and management of defendant and the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference that defendant was negligent." Shinofield v. Curtis, 245 Iowa 1352, 1360, 66 N.W.2d 465, 470, 50 A. L. R.2d 964, and citations.

"* * * In considering the applicability of res ipsa loquitur, the question whether the particular occurrence is such as would not happen if reasonable care had been used rests on common experience and not at all on evidence in the particular case that tends in itself to show such occurrence was in fact the result of negligence." Shinofield v. Curtis, supra.

At the trial Underwood, testifying in his own behalf, denied the accident happened in the manner related by plaintiff's testimony or that the drill dropped at all. This was inconsistent with Underwood's two previous statements in which he stated the drill fell. Plaintiff contends the evidence tends to establish the drill which caused him to jump back to get out of the way of the falling object was in Underwood's exclusive control and management. Thus the first of the two foundation facts on which the res ipsa doctrine rests is present here. This is probably true, although the lowering of the drill was pursuant to plaintiff's direction. We quote again from Shinofield v. Curtis, supra:

"* * * But we think it cannot be said such an occurrence as caused [plaintiff's] * * * injury does not, in the ordinary course of things, happen if reasonable care is used by the [defendant] * * *. As we have indicated, evidence which may show negligence in this particular case is not to be considered in determining the presence of this second foundation fact. The

question is to be determined from common experience."

██ Common experience does not tell us the incident described would not have happened if those in control of the instrumentality had used reasonable care. "The doctrine is applicable only where the physical cause of the injury and the attendant circumstances indicate such an unusual occurrence that in their very nature they carry a strong inherent probability of negligence and in the light of ordinary experience would presumably not have happened if those who had the management or control had exercised proper care." Shinofield v. Curtis, supra, citing 65 C. J. S., Negligence, section 220(8)a. It is a doctrine of restricted scope ordinarily to be applied sparingly and with caution and only where the facts and demands of justice make its application essential. Dorcas v. Aikman, 259 Iowa 63, 71, 143 N.W.2d 396, 402; Mickelson v. Forney, 259 Iowa 91, 94, 143 N.W.2d 390, 392.

█ "The underlying reason for the res ipsa rule or, as Dean Wigmore expresses it, 'the particular force and justice' thereof, is 'that the chief evidence of the true cause * * * is practically accessible to him [defendant] but inaccessible to the injured person.'" Eaves v. City of Ottumwa, 240 Iowa 956, 972, 38 N.W.2d 761, 770, 11 A. L. R.2d 1164, citing 9 Wigmore on Evidence, Third Ed., section 2509.

█ It does not appear that the chief evidence of the cause of plaintiff's injury was accessible to defendants but inaccessible to plaintiffs. The underlying reason for the application of the res ipsa rule is therefore not here present.

IV. This leaves for our determination whether plaintiffs are entitled to a new trial in the interest of justice.

Defendants argue the ruling is arbitrary, based merely upon the court's disagreement with the verdict.

██ A new trial should be granted when the trial court feels the verdict fails to administer substantial justice or it appears the jury has failed to respond truly to the real merits of the controversy. The trial court has a large discretion in granting a new trial in the interest of justice and its ruling will not be disturbed by us unless it is reasonably clear there was an abuse of discretion. However, this discretion is not unlimited

and cannot be arbitrarily exercised. There must be some reason that fairly appears in the record. Mazur v. Grantham, 255 Iowa 1292, 1302, 125 N.W.2d 807, 813; Larew v. Iowa State Highway Comm., 254 Iowa 1089, 1094, 120 N.W.2d 462, 464; In re Condemnation of Certain Land (Carroll County), 256 Iowa 380, 385, 127 N.W.2d 566, 569.

It fairly appears from the record that trial was commenced on Monday and testimony was finished Thursday night. It was planned to have the oral arguments Friday and submit the case that day. The court and attorneys were to meet an hour before the jury to review the instructions. About the time the court and attorneys arrived at the courthouse, a sudden blizzard began and continued for several hours. After 9 a.m. Friday travel was impossible until the latter part of the afternoon, it being physically impossible for jurors to reach the courthouse that day. The oral arguments began at 9 a.m. Saturday, the jury was instructed in the afternoon and the case submitted at 2:45 p.m. At 3:35 p.m. the jury was back in the courtroom with a verdict for defendants. The court's instructions cover 23 pages of the printed record.

The court noted the weather conditions and the lateness in the week may have all been factors in their early verdict, the record was very lengthy and because of discrepancies in defendant Underwood's testimony it became tedious at times.

Reference to discrepancies in Underwood's testimony concerns testimony given from the witness stand as compared to his earlier statements and deposition. There is ample basis in the record for this assertion. Defendant testified after plaintiff tied the rope to the drill handle, he pulled it into the chute to a height where the hole needed to be drilled, tied the rope to a crosspiece, tightened the slack and never loosened the knot to lower the drill at anytime. He further testified after getting up into the silo he looked over the top and saw the hogs chewing on the electric cord which had been strung from the barn to the silo for the electric drill, hollered down to plaintiff "The hogs are chewing on the cord", saw plaintiff go down the chute into the yard, chase the hogs away and return to the chute a second time to remove the two-by-four in the lower part. The drill was still

hanging approximately a foot to 18 inches above plaintiff's head and was never lowered from that position prior to plaintiff's fall. Defendant continued to watch the hogs and when he again saw them chewing on the cord, called to plaintiff that the hogs were at the cord and it was at this time the chute came out from the silo and he saw plaintiff on the ground.

Such evidence is in complete disagreement with defendant Underwood's deposition introduced as part of plaintiffs' case.

No useful purpose would be accomplished by reciting many of the other contradictions that appeared. It is sufficient to say the situation resulted in extensive cross-examination of defendant, numerous objections and the colloquy in the jury's presence was more prolonged than usual. That the trial became quite tedious is understandable.

The foregoing combined with the other circumstances occurring during the trial as noted by the trial court constitutes a substantial basis for its conclusion that substantial justice was not done in this case. Reason for the court's action fairly appears.

V. Many of our decisions point out that trial courts are in better position and have greater discretion than we to order a new trial in the interest of justice. We interfere reluctantly and infrequently with such an order and only upon a clear showing of abuse of discretion. Coleman v. Brower Construction Co., 254 Iowa 724, 731, 119 N.W.2d 256, 260. We do not find such a showing here.

Recent opinions stating the essential rules that apply to an appeal of this kind and precedents to support them are cited in Coulthard v. Keenan, 256 Iowa 890, 894, 129 N.W.2d 597, 599.

Defendants' contention that the awarding of a new trial for this reason—in the interest of justice—was secondary or merely supporting to the ruling on the application of res ipsa loquitur cannot be sustained.—Affirmed.

GARFIELD, C. J., and THORNTON, SNELL, MOORE and BECKER, JJ., concur.

LARSON, STUART and RAWLINGS, JJ., dissent.