MARIAN BOYER, appellee, v. IOWA HIGH SCHOOL ATHLETIC ASSOCIATION, appellant.

No. 52416.

(Reported in 152 N.W.2d 293)

Jᴜʟʏ 11, 1967.

Westfall, Laird, Burington, Bovard & Henry, of Mason City, for appellant.

William Pappas, of Mason City, for appellee.

1064

GARFIELD, C. J.—This is a law action by plaintiff, a paid spectator at a tournament basketball game under the management, supervision and direction of defendant, Iowa High School Athletic Association, to recover for personal injuries from collapse of bleachers. Defendant appeals from judgment on jury verdict for plaintiff.

The tournament was held at Roosevelt Junior High School fieldhouse in Mason City under a written contract between the school and defendant. Plaintiff, her husband and a Mr. and Mrs. Garland sat together at the game on the top row of seats. The bleachers were of wood and steel in sections 16 feet long and seven rows high. Below each row of seats above the bottom one was a wood footrest. The top row of seats was eight or nine feet above the gymnasium floor.

When the bleachers are not in use they are pushed back toward the wall with the seats and footrests in a near-vertical, rather than horizontal, position. Normally it takes three men to pull the bleachers out from their folded or collapsed position ready for occupancy and to push them back toward the wall to make added floor space. There are handholes in the vertical board between the bottom seat and the floor for use in pulling the bleachers out. "They push in kind of hard." During the school year the bleachers are pulled out and pushed back two to four times a week.

The tournament game, between teams from Mason City and a nearby town, was close and exciting. Near the end of the game the spectators seated in front of those on the top row stood up on the seats or footrests "like they do at all exciting games," and plaintiff, her husband and the Garlands were forced to do likewise in order to see the finish of the game.

As the game ended and the spectators were leaving their position in the section occupied by plaintiff and those with her, the seats and footrests collapsed or folded back toward the wall, with the boards in more of a vertical position. Plaintiff and Mr. Garland were thrown onto the floor, plaintiff's husband was left hanging by one foot on the bleachers, head down. Mrs. Garland had stepped back from the top footrest to the seat on which she

had been sitting and which was left intact. She did not fall. Plaintiff's injuries are not an issue on this appeal.

Only the one section of bleachers collapsed. Everyone in it was standing toward the end of the game. The Boyers and Garlands had been directed to the seats they occupied. There were no aisles or spaces unoccupied by spectators in the bleachers. The spectators ordinarily left the bleachers, as they attempted to do this time, by stepping from their seats or footrests to those below.

I. Plaintiff pleaded her case in two counts or divisions, one charging specific acts of negligence, the other in reliance on the doctrine of res ipsa loquitur. We have frequently held this is permissible provided, of course, the doctrine is properly applicable. Eaves v. City of Ottumwa, 240 Iowa 956, 968, 38 N.W.2d 761, 768, 11 A. L. R.2d 1164, and citations; Ruud v. Grimm, 252 Iowa 1266, 1274, 110 N.W.2d 321, 325.

The trial court ruled there was no evidence to support the charges of specific negligence and withdrew them from jury consideration. The case was submitted to the jury on the doctrine of res ipsa loquitur.

II. Defendant first assigns error in the court's refusal to withdraw from the jury the division based on res ipsa loquitur.

" 'Under the doctrine referred to, where injury occurs by an instrumentality under the exclusive control and management of defendant and the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference that defendant was negligent.' Shinofield v. Curtis, 245 Iowa 1352, 1360, 66 N.W.2d 465, 470, 50 A. L. R.2d 964, and citations.

" '* * * In considering the applicability of res ipsa loquitur, the question whether the particular occurrence is such as would not happen if reasonable care had been used rests on common experience and not at all on evidence in the particular case that tends in itself to show such occurrence was in fact the result of negligence.' Shinofield v. Curtis, supra." Smith v. Ullerich, 259 Iowa 797, 804, 145 N.W.2d 1, 5.

Thus the two foundation facts for application of the res ipsa doctrine, which permits an inference of defendant's negligence from happening of the injury, are: (1) exclusive control and management by defendant of the instrumentality which causes the injury, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used.

We think the jury could properly find these foundation facts existed and infer therefrom plaintiff's injury was caused by defendant's negligence. Bleachers designed for use by spectators at athletic events do not ordinarily collapse, when used as they normally are, without negligence of those having control and management thereof.

Defendant asserts the res ipsa doctrine does not apply, first, because it is said the evidence of the cause of the collapse was accessible to plaintiff and not peculiarly accessible to defendant. As plaintiff admits in argument, under our decisions the underlying reason for the res ipsa rule is that the chief evidence of the true cause of the injury is practically accessible to defendant but inaccessible to the injured person. See Smith v. Ullerich, supra, 259 Iowa 797, 145 N.W.2d 1, 6; Shinofield v. Curtis, supra, 245 Iowa 1352, 1360, 66 N.W.2d 465, 470, 50 A. L. R.2d 964, and citations; Eaves v. City of Ottumwa, supra, 240 Iowa 956, 972, 38 N.W.2d 761, 770, 11 A. L. R.2d 1164, and citations. See also Sample v. Schwenck, 243 Iowa 1189, 1198, 54 N.W.2d 527, 532.

In these precedents one or both of the foundation facts above referred to were lacking and the absence of what we have said is the underlying reason for the rule was given as an added reason why it was not applicable to the particular case. We have never held presence of this "underlying reason" is an indispensable requirement for application of the doctrine.

Nor are we persuaded evidence of the true cause of the collapse or partial collapse of the bleachers was not peculiarly accessible to defendant rather than to plaintiff. The athletic director of the Mason City schools was acting manager of the tournament. He and the head custodian at Roosevelt Junior High School must be deemed, under the contract between the

school and defendant, to have been acting under the management, supervision and direction of defendant. They had the exclusive control and management of the bleachers at least until game time and had the best opportunity to then discover any defect in them which may have caused the collapse.

We are told plaintiff had as much access to the bleachers immediately after the accident as defendant did and could discover any defect in them. A seriously injured person could hardly be expected to then examine the bleachers for defects rather than to be concerned with proper treatment of her injuries.

Argument that so far as shown no part of the bleachers was broken or out of place merely indicates absence of specific acts of negligence and does not negative applicability of the res ipsa doctrine. Indeed where the precise cause of the injury clearly appears or is beyond dispute there is no room for inference and the res ipsa rule has no application. Eaves v. City of Ottumwa, supra, 240 Iowa 956, 968, 38 N.W.2d 761, 768, 11 A. L. R.2d 1164 and citations; Schneider v. Swaney Motor Car Co., 257 Iowa 1177, 1185, 136 N.W.2d 338, 343.

The argument the only permissible conclusion to be drawn from the evidence is that the movement of the spectators at the end of the game caused the bleachers to collapse cannot be accepted. Such a conclusion would rest wholly on speculation or conjecture. There is no evidence to support it. Assuming, but not deciding, this would be a defense to the res ipsa doctrine, it was defendant's burden to rebut the inference of negligence. Thompson v. Burke Engineering Sales Co., 252 Iowa 146, 152, 106 N.W.2d 351, 355, 85 A. L. R.2d 689, and citations; Hall v. Town of Keota, 248 Iowa 131, 143, 79 N.W.2d 784, 791, and citations; Larrabee v. Des Moines Tent & Awning Co., 189 Iowa 319, 325, 178 N.W. 373.

Such limited control of the bleachers as plaintiff and other spectators may have had during and immediately following the game did not, as a matter of law, render the doctrine of res ipsa loquitur inapplicable. The jury could find defendant and its agents were in control of the bleachers at the time of the negligent act, as failure to inspect, which subsequently resulted

in injury to plaintiff and that she and the other spectators did nothing improper or unusual during their occupancy of them. See precedents last above, also Benedict v. Eppley Hotel Co., 159 Neb. 23, 65 N.W.2d 224, 229, 230; Van Stavaren v. F. W. Woolworth Co., 29 N. J. Super. 197, 102 A.2d 59.

Defendant seeks to distinguish most of the decisions cited by plaintiff as to applicability of res ipsa on the ground evidence was there received of some defect which may have caused collapse of the seat on which the injured person was sitting. In our view this does not detract from their weight as precedents.

■ Introduction of evidence of specific negligence does not deprive a plaintiff of the right to have the res ipsa doctrine submitted to the jury in support of a general allegation of negligence in another count. Eaves v. City of Ottumwa, supra, 240 Iowa 956, 967, 968, 38 N.W.2d 761, 768, 11 A. L. R.2d 1164, and citations; Schneider v. Swaney Motor Car Co., supra, 257 Iowa 1177, 1185, 136 N.W.2d 338, 343.

III. Defendant assigns error in the overruling of its motion to direct verdict on the ground there is no sufficient evidence to show ordinary prudence would have suggested to defendant that any negligence on its part would probably result in injury to someone. We find the assignment without merit.

In argument on this point it seems to be assumed cause of collapse of the bleachers was movement of the spectators as the game ended. As stated in the preceding division, we think this does not appear. The precedents cited consider the liability of a proprietor of a place of amusement or entertainment for sudden, isolated acts of third persons which could not reasonably be anticipated. A long quotation from Foust v. Kinley, 254 Iowa 690, 117 N.W.2d 843, constitutes the principal part of the argument. We regard these cases as not pertinent to the issues submitted to the jury.

IV. Instruction 7 told the jury defendant was the tenant or possessor of the premises where the game was played, including the bleachers, and was required to use reasonable care to protect from injury those who came there at its invitation. Defendant objected to the instruction on the ground the construction of the contract between defendant and the school was for

the jury, not the court. Overruling the objection is assigned as error.

Defendant also requested instruction 9 which would have told the jurors it was for them to determine whether, under the contract between defendant and the school, the responsibility to use reasonable care to maintain the bleachers in a reasonably safe condition was upon defendant or the school. The request was refused.

Defendant's assignment of error in the giving of instruction 7 and refusal of its ninth request is that it was for the jury, not the court, to determine what rights and duties, if any, defendant had toward the maintenance and care of the physical plant. Defendant's first brief point under this assignment is that the interpretation of an ambiguous or uncertain contract is for the jury. Plaintiff, in effect, admits this brief point as an abstract proposition. The arguments center about whether the contract is ambiguous or uncertain as defendant asserts or clear and unambiguous as plaintiff contends. We find no error in the respect asserted.

A contract is ambiguous when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists as to which of two or more meanings is the proper one. The question of interpretation, i.e., the meaning to be given the words of a contract, is one of fact which may or may not be for the judge or the jury.

Construction of a contract means determination of its legal operation—its legal effect upon the action of courts. Construction is always a matter of law for the court. Morris Plan Leasing Co. v. Bingham Feed and Grain Co., 259 Iowa 404, 416, 143 N.W.2d 404, 412, and citations; Fetters v. City of Des Moines, 260 Iowa 490, 494, 149 N.W.2d 815, 818, and citations.

Section one of the contract between defendant and the school provides:

"The School agrees that the * * * Association's DISTRICT Tournament shall be conducted and played in the School gymnasium on the following dates * * * and for such purpose to make available and furnish its gymnasium, necessary equipment other than that furnished by the Association as herein provided,

doormen, ushers, announcers, scorers, timekeepers, and to have its superintendent or principal act as active manager thereof and conduct the tournament *subject to the management, supervision and direction of the Association in accordance with its rules and regulations."* (Emphasis added.)

Section seven of the contract provides defendant agrees to pay and the school agrees to accept as full compensation *for the use of all facilities, equipment, personnel and services to be furnished by the school* twenty percent of the tournament receipts, not exceeding an average of $200 per night.

These provisions seem clearly to constitute defendant tenant or possessor of the gymnasium and equipment therein and to place the personnel and services to be furnished by the school under defendant's management, supervision and direction, for the duration of the tournament. There was no need for extrinsic evidence as an aid to interpretation of the contract nor do we find such evidence was offered.

It seems to us a rule applicable here is that presumptively the law regards the tenant of property as the owner for the time being and subject to all the responsibilities of one in possession to one who enters upon it by invitation. See Fetters v. City of Des Moines, supra, 260 Iowa 490, 497, 149 N.W.2d 815, 819, 820.

"Presumptively the one who occupies premises is liable to one who is negligently injured while rightfully thereon." Burner v. Higman & Skinner Co., 127 Iowa 580, 585, 103 N.W. 802, 804; Fetters case, supra.

It is perhaps unnecessary to this division to quote one of the rules and regulations referred to in section one of the contract between defendant and the school. However item 16 thereof has a distinct bearing on the case and may be set out. It provides:

"Item 16—CHECKING BLEACHERS AND OVERCROWDING OF GYMNASIUMS

"Your attention is called to the importance of checking your bleachers, to avoid overcrowding of them.

"As you probably remember, several years ago a section of bleachers collapsed at the Purdue University Field House. Two

students were killed and scores hospitalized. This is a serious matter and you are urged to check carefully your bleachers to ascertain that they are in good condition, well-supported and do not permit overcrowding of these bleachers. An announcement might well be made at each game urging those people on the bleachers to sit quietly. Every effort should be made to see to it that no concerted swaying movement of fans is permitted. Check your bleachers before each session. Above everything else, do not overcrowd the bleachers and do not permit crowding in the exits and aisles. High School tournaments have had a good record in Iowa. Let's keep the record untarnished."

This language must be deemed cautionary instructions to persons, as above indicated, under defendant's management, supervision and direction during the tournament.

V. Error is assigned in the refusal of defendant's first requested instruction which stated the user of a manufactured product is not required to take added precautionary measures to make it safer but is authorized to use it in the condition as purchased from the manufacturer, ordinary wear and tear excepted, provided it is used in the manner and for the purpose for which it was manufactured. Also that the jury could not find defendant negligent for failing to make the bleachers safer by adding something thereto if they were being used in the manner and for the purpose for which they were manufactured.

Defendant's objection to the refusal of this request asserted it allowed the jury to speculate as to a duty on defendant to improve a manufactured product whereas it was under no such duty.

The request appears to be based on language in Wagner v. Larson, 257 Iowa 1202, 1211, 1212, 136 N.W.2d 312, 318. Its abstract correctness may be assumed. However, we think the court was not required to so instruct and that to have done so would have injected into the case an issue not pleaded, as the case was submitted to the jury, and it might have led to confusion. Had the jury based recovery on defendant's failure to make the bleachers safer than when obtained from the manufacturer, it would have gone outside the court's instructions. See

Hart v. Hinkley, 215 Iowa 915, 919, 247 N.W. 258; Murphy v. City of Waterloo, 255 Iowa 557, 566, 123 N.W.2d 49, 54.

VI. Defendant assigns error in the refusal of its second requested instruction which would have called attention to evidence there had been no prior similar incidents; such evidence tended to show absence of danger and, in effect, lack of knowledge of danger by defendant, and should be given such weight for such purpose as the jury saw fit to give it.

Defendant's objection to the refusal of this request includes the assertion that without it the jury would not know what weight to give the testimony referred to.

The court properly refused this second request. Instructions should not ordinarily call attention to testimony favorable to one party because they give undue prominence thereto. Eaves v. City of Ottumwa, supra, 240 Iowa 956, 967, 38 N.W.2d 761, 768, 11 A. L. R.2d 1164, and citations; Vance v. Grohe, 223 Iowa 1109, 1118, 274 N.W. 902, 116 A. L. R. 332, 340. See also Belle v. Iowa State Highway Comm., 256 Iowa 43, 50, 51, 126 N.W.2d 311, 315, 316, and citations.

VII. Defendant's final assignment is in failure to sustain its motion for directed verdict on the ground plaintiff did not prove negligence of defendant.

As stated in Division I hereof, the court ruled there was no evidence to support the charges of specific negligence and withdrew them from jury consideration. Defendant argues it follows from this the count based on res ipsa loquitur should also have been withdrawn since, we are told, there was no failure of the mechanism.

This final assertion is not quite accurate. The bleachers collapsed to a position where occupants were thrown to the floor. It is true there is no evidence of the specific cause of the collapse. But it does not appear, certainly not as a matter of law, there was no failure of the mechanism. In any event, we think this assigned error is answered by our holding in Division II that absence of evidence of specific acts of negligence does not negative applicability of the res ipsa doctrine.

We find no reversible error in any respect assigned and argued.—Affirmed.

All JUSTICES concur except MASON, J., who takes no part, and BECKER and RAWLINGS, JJ., who concur specially in the result.

BECKER, J.—I concur in result. It seems both unnecessary and unwise to continue to cling to the *exclusive control* doctrine when we have decided cases where exclusive control was not in fact proved and yet approved the use of the doctrine of res ipsa, Weidert v. Monahan Post Legionnaire Club, 243 Iowa 643, 51 N.W.2d 400; Sutcliffe v. Fort Dodge Gas & Elec. Co., 218 Iowa 1386, 257 N.W. 406; Thompson v. Burke Engineering Sales Co., 252 Iowa 146, 106 N.W.2d 351, 84 A. L. R.2d 689, and Larrabee v. Des Moines Tent & Awning Co., 189 Iowa 319, 178 N.W. 373. Many authorities on the subject indicate quite clearly that exclusive control is not, or should not be, a prerequisite to the application of the doctrine of res ipsa loquitur.

Restatement, Second, Torts, section 328D (g), page 161. "Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case. The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against."

Harper and James, The Law of Torts, section 19.7, page 1085, states: "Viewed in this light the requirement of proof of exclusive control is immediately seen to impose too strict a burden upon plaintiffs. Exclusive control may have the requisite logical tendency, but there are also many other ways (not involving exclusive control) in which the probable negligence can be attributed to defendant. And in fact the courts do not generally apply this requirement as it is literally stated, although mechanical insistence upon it has brought about an occasional restrictive result. The requirement as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was probably 'such that the defendant would be responsible for any negligence connected with it.'"

Other authorities might be cited for the proposition that

while exclusive control is an element to be considered, it is not a prerequisite to the use of the doctrine.

RAWLINGS, J., joins in this special concurrence.