VIVIAN HAHN, a minor, by her next friend and mother, Sylvia Hahn, appellant, v. JIMMIE J. GRAHAM, appellee.

No. 51351.

(Reported in 128 N.W.2d 886)

June 9, 1964.

Messer & Cahill and Jerry L. Lovelace, all of Iowa City, for appellant.

D. C. Nolan, of Iowa City, for appellee.

THOMPSON, J.—On February 11, 1959, Vivian Hahn, then eight years of age, was seriously injured in a collision between an automobile driven by her brother, William T. Hahn, and a truck equipped with a snowplow, owned by Johnson County and being operated by the defendant. The accident occurred in daylight, about 8 a.m., on a county road in Johnson County. Both vehicles were traveling east, with the truck in advance and engaged in snow removal from the highway. Just west of a bridge on the highway the automobile collided with the rear of the truck, resulting in the death of the driver, serious injuries to Anna Marie Hahn, an older sister, and still more serious injury to Vivian. Although the action is brought by her mother as her next friend, Vivian Hahn will be referred to hereinafter as the plaintiff.

Plaintiff's petition alleged certain specific negligences against the defendant, which it is not necessary to detail here. The defendant denied any negligence on his part. The real fighting point in the case is whether the accident was caused solely by the negligence of the driver of the car in which the plaintiff was riding. A collision of this sort does not often happen without negligence on the part of someone. Of course it is possible that both drivers were negligent; we shall discuss this feature of the case later. We shall also state facts relevant to errors assigned as we reach them.

The plaintiff assigns five errors. The first four deal with the court's submission of issues concerning respectively the condition of the brakes on the Hahn car at the time of the accident, of the speed of the car, control and lookout, and error in an

instruction which told the jury the plaintiff could recover if she had proven the negligence of the defendant was the sole proximate cause of the collision. The fifth assignment asserts error in denying plaintiff's motion for a new trial because of erroneous and confusing instructions, and generally that she did not have a fair trial and justice was not accorded her. We shall discuss these in order.

It was plaintiff's contention, and her evidence tended to show, that as the truck reached the west end of the bridge, it pulled from its right-hand side of the roadway to the center, and stopped. The highway was icy and slippery. The defendant testified that he did not pull to the left more than four to six inches, as the road narrowed slightly as it entered the bridge, and he denied stopping. His truck, after the collision, crossed the bridge and stopped a few feet east of it. It is his theory of the case that the accident was caused by the negligence of the driver of the car in which the plaintiff was riding, in that the car was equipped with faulty brakes, that it was traveling at an excessive speed under the prevailing circumstances, was not under proper control, and the driver failed to keep a sufficient lookout. Instruction No. 16 of the court submitted these contentions for the jury's determination. The plaintiff contends there was insufficient evidence of any of them to permit such submission; and also raised the questions by objections to the defendant's evidence.

 I. In connection with the claimed inadequacy of the brakes on the Hahn car, the defendant introduced, over the objection of the plaintiff that it was "incompetent, irrelevant and immaterial and no proper foundation having been laid", the testimony of Lawrence Crock, an automobile mechanic of many years experience in repairing damaged automobiles and appraising damage to them, and with two years training in trade schools on mechanical work in the United States Navy. His qualifications were ample.

 The defendant urges that the objection was not specific enough to call the court's attention to the real ground now claimed, which is chiefly that the inspection of the damaged car and its brakes was not closely enough related to the time of the

accident to furnish any ground for a finding that the brakes were defective when the collision occurred. The inspection was made by the witness on April 2, 1959, forty days after the accident, and when the car had been moved to a salvage lot in Coralville, some miles from the place of the collision. It is doubtful whether the objection did in fact acquaint the court with the claimed weakness in the testimony. In Jettre v. Healy, 245 Iowa 294, 299, 60 N.W.2d 541, 544, we said "* * * specific objections cannot be urged under the general objection that evidence is 'incompetent, irrelevant and immaterial.' The objection must in some way call the court's attention to the ground of objection."

But whether the objection here was sufficiently specific, we think the evidence was properly admitted, with its weight being for the jury to decide. The expert witness said that the brakes had not been damaged in the collision; that their condition was not caused by the accident. But much of the brake fluid had seeped out, so that the first application of the brakes would have no effect; the brake pedal would go "clear to the floor." After pumping the pedal three or four times, there would be some braking effect. There was fluid in the master cylinder, "not very much, something like between a quarter and a half inch." There was black sediment in this fluid, which did not belong there, and this would very easily clog the outlet and plug it and there would be no brakes.

Mr. Crock said the condition of the brakes he found had existed for some time, and was definitely not brought about by the collision in anyway. It might be concluded that it existed at the time of the accident; or that, although not caused by the collision, the fluid had leaked during the period following it. We think this question, together with that of the foreign sediment found in the master cylinder, was properly submitted to the jury and the court's instruction on the question of defective brakes was in order. The plaintiff urges that because of the condition of the highway, the adequacy of the brakes was immaterial. The contention seems to be that brakes, good or bad, would have no effect on a slippery road, covered with icelike packed snow. Again we think this was for the jury to say. We

are not convinced that good brakes may not be found to be better than defective ones, even on a treacherous icy highway.

II. Error is assigned on the admission of evidence of speed of the Hahn car, and in submitting the question to the jury as the court did in instruction 16. Section 321.285, Code of 1962, is the general speed restriction statute. It provides: "Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law."

Ronald Cuppy, age 19, who lived, as he said, about three quarters of a mile from the scene of the accident, was driving out of the farm lane leading to his home on the morning of the accident. He testified that he looked in both directions—east and west—before entering the highway. He could see about 400 feet to the west as he drove onto the highway, and there was nothing in sight then. After he had gotten on the highway, which was snow packed and icy with clear spots, he saw the Hahn car coming down the hill toward him; his car sputtered, and he saw the oncoming car "coming down that close." He said the Hahn car was "going fast." Objection was made to this testimony; and it is now urged that the distance was too remote, and the statement that the Hahn car was "going fast" was inadmissible and did not tend to establish any excessive speed.

Anna Marie Smith, the former Anna Marie Hahn, testified that she was riding in the right front seat of the car with her brother, who was driving, with the plaintiff in the middle. She said they saw the Cuppy car "about a quarter of a mile before the accident." There is thus some difference in the evidence as to distance from the accident at which Ronald Cuppy noted the speed of the Hahn car. However, we think the question of remoteness in distance rested in the sound discretion of the trial court, and it was not abused. In Anderson v. Elliott, 244 Iowa

670, 680, 57 N.W.2d 792, 797, we held that evidence of speed at a distance of one and one-quarter mile from the scene of an accident was properly admitted, within the "considerable discretion" of the trial court. Several other authorities are there cited.

We also said that such evidence, standing by itself, would perhaps have little probative value, but "there is more." So it is here. It is undisputed that after the collision the truck stopped about ten feet east of the east end of the bridge. It was loaded with four tons of sand, to secure better traction while the snow-plow was in use. While the defendant said he did not stop at anytime, Anna Marie Smith testified for the plaintiff that the truck was stopped at the time of the collision. If this part of her testimony was believed—and it was for the jury to say—the Hahn car must have hit it with sufficient force to drive it, heavily loaded as it was, across the bridge and ten feet beyond. The defendant says the impact was "terrific." Pictures of the car show heavy damage.

As to the statement that the Hahn car was "going fast", we have several times held such testimony admissible. Torrence v. Sharp, 246 Iowa 460, 463, 68 N.W.2d 85, 87; Slabaugh v. Eldon Miller, Inc., 244 Iowa 29, 34, 55 N.W.2d 528, 530, 531, and citations. In situations such as the one before the court, the condition of the pavement, the visibility at the time, the configuration of the highway, the damage to the vehicles and the testimony of the witnesses are all material. There was ample evidence to support the submission of the issue of the speed of the Hahn car.

III. Next the plaintiff urges there was no sufficient evidence of lack of control and proper lookout on the part of the driver of the Hahn car to warrant submission of those issues. Control is closely related to speed, in the usual automobile negligence case. It is evident that if the driver here was found to have been operating his automobile at a speed which was excessive under the circumstances, it could also be found that he did not have it under such control as to permit him to stop it or change its course, so as to avoid a collision, with a reasonable degree of celerity. In Mescher v. Brogan, 223 Iowa 573, 581, 272 N.W. 645, 649, we said: "A car is no less out of control as

evidenced by swerving than it is when going in a straight line at such a rapid rate of speed that to vary or change its course to pass an object or make a turn would be impossible of accomplishment without an upset."

Lookout is another issue often related to speed and control. It is usually impossible to say, as a matter of law, whether an accident occurred because of excessive speed, or lack of control, or failure to keep a proper lookout, in the exercise of due care. There is no evidence here as to whether the driver of the Hahn car was looking ahead. This distinguishes Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 61 N.W.2d 696, relied upon by the plaintiff. In that case the driver testified he saw the other car and watched it for one fourth of a mile before the collision. It is true that in the instant case the defendant's truck was in plain sight for some distance ahead of the Hahn car. But this points up the question whether the Hahn driver was alert and saw it in time to avoid the accident. Perhaps he saw it, and was unable to stop in time because of excessive speed and lack of control; perhaps his brakes were faulty; or his attention was diverted, and the collision occurred because of lack of adequate lookout; perhaps, of course, he was in all respects in the exercise of due care and the accident happened through the negligence of the defendant, and perhaps the tragedy was due to a combination of some or all of these negligences. We think under the record here these problems were all for the jury. In Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 390, 249 N.W. 220, 224, we emphasized the lack of any evidence of lookout by the driver who struck a pedestrian. It is true in the case at bar that the testimony of the driver was not available to the plaintiff, because he was dead; but this does not meet the requirements of Ehrhardt v. Ruan Transport Corporation and Lorimer v. Hutchinson Ice Cream Co., both supra.

Circumstantial evidence may be sufficient to generate a jury question on issues of negligence. Hayes v. Stunkard, 233 Iowa 582, 586, 10 N.W.2d 19, 21. It was for the jury to say whether the defendant's theory of the case was reasonably

probable, and more probable than any other hypothesis, based on the evidence introduced.

IV. The plaintiff strongly urges that instruction No. 16 was seriously in error in that it told the jury the plaintiff could recover if it found that "the negligence of the defendant was the sole and proximate cause of the collision and plaintiff's injuries and damages." This, the plaintiff contends, was highly prejudicial because it omits the theory of concurrent negligence of the driver of the car in which the plaintiff was riding and of the defendant. The question was thoroughly discussed and briefed in Law v. Hemmingsen, 249 Iowa 820, 824–826 inc., 89 N.W.2d 386, 390, 391.

But the difficulty with plaintiff's position at this point is that there was no exception taken to the instruction which raised the point now urged. Exceptions were taken to the instruction; but they all dealt with the submission of the issues of defective brakes on the Hahn car, and of speed, control and lookout, contending there was no evidence sufficient to justify the submission of these issues. Nowhere was the claimed error in omitting concurrent negligence touched upon in any exception.

While we are not to be understood as approving the instruction as given, there is nothing we can do about it. The error, if such there was, was not preserved as required by rule 196, Rules of Civil Procedure, which provides: "* * * Before reading them to the jury, the court shall submit to counsel its instructions in their final form, noting this fact of record, and granting reasonable time for counsel to make objections after argument to the jury and before the instructions are read to the jury. Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. * * *."

We have discussed and applied this rule in several cases. In Crist v. Iowa State Highway Commission, 255 Iowa 615, 628, 629, 123 N.W.2d 424, 432, we said: "We have repeatedly held that this rule means what it says. Exceptions must be taken, both to instructions given and failure to give

requested instructions, and the reasons must be specifically stated." Other authorities are there cited which have applied the same rule.

It is the undoubted purpose of rule 196 that the trial court be given an opportunity to correct errors in the initial draft of the instructions, if counsel think there are such and will point them out. But when they are not so made known to the court, the opportunity for correction is lost; and equally, the basis for claim of error is denied one who may later think he is aggrieved by some misstatement or omission.

V. The assigned error in overruling the plaintiff's motion for new trial raises chiefly the same questions we have discussed above. The motion did, however, assert that a new trial should be granted in the interest of justice, and because the plaintiff, under the entire record, did not have a fair trial. The trial court had a considerable discretion in ruling on the motion, and quite evidently it did not find such an injustice or denial of a fair trial as to call for granting a new trial. There was a sharp contradiction in the facts at some material points; and while the injuries of the plaintiff are most serious and distressing, the jury found the issues of fact in favor of the defendant, and we cannot say the trial court abused its discretion. Hoovler v. Wolfe, 245 Iowa 1302, 1305, 66 N.W.2d 486, 487; Curnutt v. Wolf, 244 Iowa 683, 689, 57 N.W.2d 915, 919. It is true we will interfere more reluctantly with the grant of a new trial than with its denial; Schneider v. Keokuk Gas Service Co., 250 Iowa 37, 42, 92 N.W.2d 439, 442. But this does not mean that the trial court has no discretion to deny a new trial.

We find no reversible error.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting, and LARSON, J., who dissents from Division I.